IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

# FILED

May 10, 2022 10:45 AM
ST-2018-CV-00261
TAMARA CHARLES
CLERK OF THE COURT



## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

SHARLINE L. ROGERS,

                Plaintiff,

              vs.

GOVERNMENT EMPLOYEES'[1] RETIREMENT
SYSTEM OF THE UNITED STATES VIRGIN
ISLANDS (GERS), and the GOVERNMENT
EMPLOYEES' RETIREMENT SYSTEM BOARD
OF TRUSTEES,

                Defendants.

) CASE NO. ST-2018-CV-00261
) (*Formerly* ST-2018-SM-00071)
)
) ACTION FOR DECLARATORY
) JUDGMENT
)
)
)
)
)
)
)
)
)

Cite as: 2022 VI Super 23U

## MEMORANDUM OPINION

¶1    **THIS MATTER** is before the Court on:

1. Plaintiff's Notice Of Motion For Summary Judgment ("Motion for Summary Judgment") and Memorandum In Support Of Motion For Summary Judgment ("Memorandum"), filed March 5, 2019;

2. Defendant's [the Government Employees Retirement System of the United States Virgin Islands] Opposition To Plaintiff's Motion For Summary Judgment, filed April 4, 2019;

3. Plaintiff's Reply To The Government Employees' Retirement System's Opposition To Motion For Summary Judgment, filed April 17, 2019; and

4. Defendant GERS Board Of Trustees Opposition To Plaintiff's Motion For Summary Judgment, filed April 17, 2019.

¶2    The Oppositions filed by both Defendants also address a sum of money that is the subject of another case involving the same parties: *Sharline L. Rogers v. Government Employees'*

---

[1] V.I. Code Ann. tit. 3, § 701 states" "[t]he system created under this chapter shall have the powers and privileges of a corporation, subject, as provided herein, to the control of the Board of Trustees thereof, and shall be known and designated as the 'Government Employees Retirement System of the Virgin Islands'". In other words, there is no apostrophe (') after Employees.

*Retirement System of the United States Virgin Islands and Government Employees' Retirement System of the United States Virgin Islands Board of Trustees,* Case No. ST-2017-CV-00337.

For the reasons set forth below, Plaintiff's Motion For Summary Judgment will be granted in part and denied in part, and the Defendants will ordered to: (1) return the monies overpaid by Plaintiff; (2) provide an accounting on the amount of interest that actually accrued during the period Defendants retained and had use of Plaintiff's funds; and (3) pay to Plaintiff the amount of interest that actually accrued on her overpayment of $8,138.50.

## I.    INTRODUCTION

¶3    On March 8, 2018, Plaintiff Sharline L. Rogers ("Rogers") filed a Complaint *pro se* against the Government Employees Retirement System of the United States Virgin Islands ("GERS") and its Board of Trustees (the "Board") seeking restitution of $8,138.50, plus interest, in excess contributions as well as costs and attorney's fees. In May of 2018, the case was transferred from the Magistrate Division to the Civil Division of the Superior Court of the United States Virgin Islands. Rogers filed for summary judgment on March 5, 2019.

¶4    Rogers states that on or about October 5, 2005, she was employed with the Legislature of the Virgin Islands, and on or around that time the "Tier II" retirement benefits program for GERS became law; that in May 2007 she left the Legislature to work for the District Court of the Virgin Islands; and that in September 2012, she began employment with the Virgin Islands Water and Power Authority ("WAPA") where she again became a member of the Government Employees' Retirement System.[2] WAPA mistakenly deducted retirement contributions and remitted them to GERS as if Rogers was enrolled in the Tier II retirement benefits program, instead of the Tier I program.[3] Rogers challenged these contributions by email on July 16, 2014, one month after she joined the Legislature of the Virgin Islands ("Legislature"), which also deducted Rogers' retirement contributions at the Tier II level.[4]

¶5    On January 15, 2015, GERS confirmed by letter that Rogers was a member of the Tier I retirement benefits program. However, the Legislature continued to  make deductions from Rogers' paycheck as if she were a Tier II member until March 2015.[5] Between September 2012 to December 2015, Rogers paid $26,580.78 into GERS. If Rogers was accurately assessed as a Tier I member during this time, she would have only paid $18,442.28; therefore, Rogers overpaid GERS in the amount of $8,138.50.[6] Starting with a letter dated April 12, 2016, and continuously from then to October 25, 2017, before the initiation of this action, Rogers has been requesting a

---

[2] Pl.'s Mem. 2.
[3] Pl.'s Mem. 2.
[4] Pl.'s Mem. 2-3.
[5] Pl.'s Mem. 3.
[6] Pl.'s Mem. 3.

refund of this money.[7]

¶6    Rogers argues that V.I. CODE ANN. tit. 3, § 713(a), which governs how GERS manages members' refunds, has no provision that governs the "rate of interest that is due on monies received in circumstances where contributions have been deducted from a member's compensation" when the member has been classified in the wrong tier.[8] Rogers points to the same provision to show that refunds in the case of erroneous deductions are processed and become due six (6) weeks after the end of a quarter.[9] Rogers then points to 11 V.I.C. § 951(a), which states that the rate of interest shall be nine (9%) per centum per annum on all monies which have become due.[10]

¶7    Rogers explains that § 713(a) provides that one is eligible for a refund with regular interest if the member "has withdrawn from the System, does not have ten years of service, and is not eligible for a service retirement annuity."[11] Rogers asserts she does not meet any of these criteria, as she is currently a member of the System, has over fourteen (14) years of credited service, and is eligible for a service retirement annuity.[12] Rogers then asserts that § 713(a) is the only section in all of chapter 27 of the Virgin Islands Code where the term "regular interest" is used and as such, "the only logical conclusion to make is that regular interest is earned only on monies refunded under the precise circumstances provided for" in § 713(a).[13]

¶8    Rogers highlights the District Court of the Virgin Islands decision in *MacDonald v. Davis*[14] for the premise that prejudgment interest is necessary so that the relief granted does not "otherwise fall short of making the claimant whole because he or she has been denied the use of the money which was legally due."[15] Rogers also cites to the Court of Appeals for the Third Circuit case of *Addie v. Kjaer*[16] for the rule that once the Court has found the equities of the case to warrant prejudgment interest, the 9% rate provided for by § 951(a) is mandatory.[17] Rogers also points out that courts in states with similarly worded statutes, such as New York and Massachusetts, have made the same determination.[18]

¶9    Rogers further states that by letter dated April 12, 2016, she demanded a refund of her excess contributions and that the Application for Refund of Erroneous Contributions states that refunds are processed "six weeks after the end of the Quarter in which the applicant receives his/her

---

[7] Pl.'s Mem. 4.
[8] Pl.'s Mem. 4.
[9] Pl.'s Mem. 4.
[10] Pl.'s Mem. 4-5.
[11] Pl.'s Mem. 7.
[12] Pl.'s Mem. 7.
[13] Pl.'s Mem. 7-8.
[14] No. 2004-93, 2009 U.S. Dist. LEXIS 44709 (D.V.I. May 18, 2009).
[15] *Id.* at *4-5; Pl.'s Mem. 8
[16] 836 F.3d 251 (3d Cir. 2016).
[17] *Id.* at 451; Pl.'s Mot. 9.
[18] Pl.'s Mem. 9-10.

final regular salary."[19] Rogers then argues that GERS' practice and policy, however, is to refund erroneous contributions after an application has been submitted and after a GERS determination that excess payments were, in fact, paid, and she submits an affidavit from another employee who made excess payments as evidence of this policy; the affidavit is attached as Plaintiff's Exhibit H.[20]

¶10     Rogers then analogizes her case with that of *Carroll v. City of Philadelphia Bd. Of Pensions & Retirement Mun. Pension Fund*.[21] In *Carroll*, a city employee who was enrolled in a city pension plan had stopped working for the city during which time, a new pension plan was adopted by the city for subsequently hired employees; the employee returned to work for the city after the adoption of the new plan but was erroneously re-enrolled in the former plan which had a higher contribution amount.[22] The Board of the Philadelphia pension fund refunded the employee the erroneous compensation but did not pay him interest and, on appeal, the Commonwealth Court awarded him 6% interest, as established by the statutory rate.[23] Rogers lastly calculates the interest due on her $8,135.50 refund at the 9% rate between August 2016 and February 2019 to be $1,891.50.[24]

¶11     In its Opposition, GERS disputes that, pursuant to 3 V.I.C. § 715(a), the Board is responsible for the proper operation of GERS.[25] GERS also disputes that Rogers has continuously demanded a refund but has not received one from GERS.[26] GERS states that its staff calculated Rogers' total contributions to the system based on her employment with the U.S. District Court, WAPA, and the Legislature up to March 31, 2004, which had been $16,139.00 and that GERS informed Rogers of this by letter dated February 27, 2006.[27] GERS states that its staff had erroneously included Rogers' employment with the U.S. District Court when calculating her non-credited time, and GERS informed Rogers of this by letter dated August 23, 2016, which the letter is attached as Defendant's Exhibit "4."[28]

¶12     GERS also states that by letter dated January 23, 2015, GERS confirmed that Rogers' work history reflects she is a Tier I benefits program member, and it also informed Rogers that the amount deducted from her salary is controlled by her employer, not GERS.[29] GERS argues that 3 V.I.C. § 702(k) defines "regular interest" as the interest determined by the Board, so long as it is

---

[19] Pl.'s Mem. 11-12.
[20] Pl.'s Mem. 12.
[21] 735 A.2d 141 (Pa. Commw. Ct. 1999); Pl.'s Mem. 12.
[22] 735 A.2d at 142-43.
[23] *Id.* at 146.
[24] Pl.'s Mem. 13.
[25] Def. GERS' Opp'n 1.
[26] Def. GERS' Opp'n 2.
[27] Def. GERS' Opp'n 4.
[28] Def. GERS' Opp'n 4.
[29] Def. GERS' Opp'n 5.

between 2% and 4% and that Resolution No. 09-2209 of the GERS Board established the interest rate as 2% effective July 1, 2009.[30] GERS states that by letter dated September 28, 2016, it informed Rogers the $16,139.00 would be refunded to her with 2% interest.[31]

¶13   On October 7, 2016, Rogers responded with a request to GERS for a refund of the $16,139.00 at 6% interest in the amount of $9,199.23 and a full refund of the excess contributions of $8,531.77.[32] GERS states that Rogers informed them on January 13, 2017 that she would appeal the matter to the Board, and GERS informed her again it could not pay her more than 2% interest.[33] By letter dated February 17, 2017, Rogers requested from GERS that the $8,531.77 be paid to her with or without the 2% interest, and the $16,139.00 be refunded with 6% simple interest, calculated between July 2007 and February 2017.[34]

¶14   GERS states that on May 10, 2017, it sent Rogers a check for $23,404.44 for the contributions erroneously deducted by her employer while at WAPA and the Legislature and on June 6, 2017, Rogers rejected and returned the check through a letter.[35] GERS argues that summary judgment should not be granted because there are several issues of material fact and law it states are in dispute.[36] GERS states that 3 V.I.C. § 704(h) was passed in 1966 to provide retirement benefits to federal employees who became Territorial government employees in the 1960s as the Territorial government "took on additional responsibilities."[37] GERS argues this is clear from the sunset clause provision of the law, which states "[t]he provisions of this amendment shall stay in effect for a period of 3 years after April 4, 1966."[38]

¶15   GERS asserts the $16,139.00 amount Rogers claims in her February 27, 2006 letter was calculated from her time at WAPA, the Legislature, and the District Court, not just the District Court alone, and, thus, Rogers did not pay $16,139.00 just for missing federal employment.[39] GERS argues that the $23,404.44 amount it sent on May 10, 2017, calculated using the 2% interest, "surely covered all of the amount that she over paid."[40]

¶16   GERS further argues that Rogers is not entitled to prejudgment interest because "there is no provision in the Virgin Islands Code that allows for such interest to be awarded on overpayment of contributions" and the only provision that mentions interest is when a "non-vested member

---

[30] Def. GERS' Opp'n 5.
[31] Def. GERS' Opp'n 6.
[32] Def. GERS' Opp'n 6.
[33] Def. GERS' Opp'n 6.
[34] Def. GERS' Opp'n 6.
[35] Def. GERS' Opp'n 6-7.
[36] Def. GERS' Opp'n 7.
[37] Def. GERS' Opp'n 8.
[38] 3 V.I.C. § 704(h)(3); Def. GERS' Opp'n 9.
[39] Def. GERS' Opp'n 8-9.
[40] Def. GERS' Opp'n 9.

leaves the system" which shows "the Legislature's clear intent that interest should not be given for other instances of refunds" since they would have placed it in the code.[41] GERS cites to the District of Columbia Circuit Court and the Virgin Islands District Court for the proposition that "[i]ntentionally omitting interest in other sections of the Code shows a clear intent by the [L]egislature to limit accumulated interest payments only to individuals who have withdrawn from service."[42] Lastly, GERS argues that awarding prejudgment interest would unfairly burden GERS when the overpayments were not the fault of GERS, but Rogers' employers, and GERS submitted a check already which was rejected.[43]

¶17    GERS then argues that the 9% interest provision of 11 V.I.C. § 951 does not apply because GERS "is a trust fund that is a repository for member's and government's retirement contributions" that members pay into and which only has a duty to pay retirement or disability annuities when an employee and employer have made sufficient contributions and other requirements are met.[44] GERS asserts that there has been no breach of contract between the member and GERS because the time for performance, Rogers' retirement, has not yet arrived and, therefore, no payment has become due.[45]

¶18    GERS also differentiates the *Carroll* case cited by Rogers by stating in that case the statute did not mention a regular interest rate, but 3 V.I.C. § 713 does mention a regular interest rate.[46] Further, GERS argues that the rate in 11 V.I.C. § 951 is in the commercial section of the Virgin Islands Code and is intended for commercial transactions, not the return of an overpaid contribution.[47] GERS then contends that a 9% interest rate is "extremely exorbitant" as a review of saving account interest rates offered by banks at the time shows they were "consistently below 1%."[48] GERS concludes by stating that "[i]t is quite clear that the legislature intends to protect that trust fund for current and future employees by not awarding interest for mistakes not made by GERS."[49]

¶19    The Board argues that, while there is no other mention of refund in the GERS enabling statute, "the spirit of § 713(a) was meant to address refunds generally" and as the only section that explicitly addresses refunds in chapter 27, the regular interest set by the Board pursuant to that section is the interest rate to be used when returning refunds.[50] The Board also argues that prejudgment interest should not be granted "because exceptional and unusual circumstances exist"

---

[41] Def. GERS' Opp'n 10-11.
[42] Def. GERS' Opp'n 11.
[43] Def. GERS' Opp'n 11.
[44] Def. GERS' Opp'n 12.
[45] Def. GERS' Opp'n 12-13.
[46] Def. GERS' Opp'n 13.
[47] Def. GERS' Opp'n 13.
[48] Def. GERS' Opp'n 13.
[49] Def. GERS' Opp'n 14.
[50] Def. Board's Opp'n 5.

making the award inequitable.[51] These circumstances include the mistake by the GERS member who informed Rogers she could receive non-credited service for work at the District Court, GERS is currently experiencing financial strain and such an award may adversely affect members, including Rogers, and the 2% interest is just and equitable as it is the current rate set by GERS.[52]

¶20    The Board also argues that Rogers and GERS entered into a contract upon the payment of $16,139.00,[53] where Rogers received service credit towards retirement, the time of performance was not ascertained, and the contract was silent as to damages.[54] The Board states that because the law is silent on damages, the Court should apply the Restatement (Second) of Contracts § 354(2), which states that "such interest may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due."[55]

¶21    The Board further argues that if the Court is persuaded by Rogers' unjust enrichment claim, the Court should follow the example outlined in *Addie v. Kajer*[56] where, when performance on a contract is discharged because of impracticability of performance, frustration of purpose, non-occurrence of a condition or disclaimer, the party receives back to it whatever benefit it has already conferred.[57] The Board states that Rogers has conferred $16,139.00 to GERS and, thus, an adequate remedy under unjust enrichment is the return of this money to Rogers.[58]

¶22    Rogers replies that GERS' Opposition "acknowledges as true all material facts that establish that [GERS] owes Plaintiff $8,135.50 for excess contributions paid between September 2012 and March 2015."[59] Rogers states she received the $23,404.44 check but returned it to GERS "because there was no explanation of what obligation the $23,404.44 satisfied."[60] Rogers argues that because refunds are processed "six weeks 'after the end of the quarter in which the applicant receives his/her final regular salary,'" her money became due on or about August 2016, approximately six (6) weeks after April 2016, the quarter in which Rogers requested the refund.[61] Rogers also points to the affidavit (attached as Plaintiff's Exhibit "H") which shows another employee receiving her refund less than one year after requesting it, which demonstrates GERS's

---

[51] Def. Board's Opp'n 6.
[52] Def. Board's Opp'n 6.
[53] This number reflects payments Rogers made to GERS under the erroneous guidance she could be credited for her time at the Virgin Islands District Court. This payment is addressed in the Memorandum Opinion issued in Case No. ST-2017-CV-00337.
[54] Def. Board's Opp'n 6-7.
[55] RESTATEMENT (SECOND) OF CONTRACTS § 354(2) (1981); Def. Board's Opp'n 7.
[56] 737 F.3d 854 (2013).
[57] Def. Board's Opp'n 7.
[58] Def. Board's Opp'n 7.
[59] Pl.'s Reply 1. The $8,135.50 number quoted here is different from the $8,138.50 Rogers calculated in her Motion and Complaint and appears to be a scrivener's error.
[60] Pl.'s Reply 1.
[61] Pl.'s Reply 1-2.

"bad faith."[62]

¶23   Rogers then states that while GERS says she is not entitled to interest or only the interest set by the Board, she had stated she would accept the refund of $8,135.50[63] "with or without interest" and, to date, this money still has not been returned to her.[64] Rogers concludes by again stating that since it is her position the money became due in August of 2016, therefore, pursuant to 11 V.I.C. § 951(a)(1), she is entitled to 9% interest on the money from then until it is paid.[65]

## II.   LEGAL STANDARD

### A.  Summary Judgment

¶24   Summary Judgment is governed by Rule 56 of the Virgin Islands Rules of Civil Procedure, which states:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.[66]

¶25   Or, as the Virgin Islands Supreme Court stated in *Antilles School, Inc. v. Lembach,*[67] summary judgment is appropriate when after "considering all of the evidence, accepting the nonmoving party's evidence as true, and drawing all reasonable inferences in favor of the nonmoving party, the court concludes that a reasonable jury could only enter judgment in favor of the moving party."[68]

¶26   Summary judgment is a "drastic remedy" and only proper where "the pleadings, the discovery and disclosure materials on file . . . show that there is no genuine issue as to material fact[.]"[69] The nonmoving party must show in its response to a motion for summary judgment that

---

[62] Pl.'s Reply 2.

[63] The $8,135.50 number quoted here is different from the $8,138.50 Rogers calculates in her Motion and Complaint and appears to be a scrivener error.

[64] Pl.'s Reply 2.

[65] Pl.'s Reply 2.

[66] V.I. CIV. P. 56(a).

[67] 64 V.I. 400 (V.I. 2016).

[68] *Id.* at 409.

[69] *Anthony v. FirstBank Virgin Islands,* 58 V.I. 224, 228 (V.I. 2013) (quoting *Williams v. United Corp.,* 50 V.I. 191, 194 (V.I. 2008)).

there are "specific facts showing a genuine issue for trial."[70] In addition, "[t]he non-moving party may not rest upon mere allegations but must present actual evidence showing a genuine issue for trial. Such evidence may be direct or circumstantial, but the mere possibility that something occurred in a particular way is not enough[.]"[71] For a nonmoving party to show some genuine issue of material fact for trial, "'the nonmoving party may not rest on its allegations alone, but must present actual evidence, amounting to more than a scintilla,' in support of its position."[72] Further, "[i]f the non-movant offers evidence that is 'merely colorable' or not 'significantly probative,' summary judgment may be granted."[73] Finally, the "Court may not itself weigh the evidence and determine the truth; rather, we decide only whether there is a genuine issue for trial such that a reasonable jury could return a verdict for the non-moving party."[74]

### B. Government Employees' Retirement System; Refunds; Interest

¶27     On June 24, 1959, the Virgin Islands Legislature established "a retirement and benefit system for officials and employees of the Government of the United States Virgin Islands and for their dependents and beneficiaries, for the payment of retirement annuities, disability annuities, and other benefits . . . to said officials and employees, and to their dependents and beneficiaries[.]"[75] "The responsibility for the proper operation of the System and for making effective the provisions of this chapter is vested in the Board of Trustees" which is composed of seven (7) members.[76] Title 3, § 713(a) of the Virgin Islands Code establishes how a government employee may receive a refund from GERS, and it reads in its entirety:

> Upon withdrawal from service, any member who does not have ten years of credited service and is not then eligible for a service retirement annuity shall be entitled to receive a refund of the accumulated contributions, plus regular interest, including contributions made by the member to any superseded retirement System. Any member withdrawing from service who does not receive a refund and later returns to service shall receive credit for the amount of credited service in force at the time of his withdrawal from service. Any member receiving a refund shall thereby waive and relinquish all accrued rights in the System including all accrued credited service. The System may, in its discretion, withhold payment of a refund for a period not to exceed one year after receipt of an application from a member. If no specific request to the contrary is made by a member within 30 days from the date of his separation from the service, the

---

[70] *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008) (quoting FED. R. CIV. P. 56(e)).

[71] *Id.* at 229 (quoting *Williams*, 50 V.I. at 194-95).

[72] *Anderson v. American Fed'n of Teachers*, 67 V.I. 777, 789 (V.I. 2017) (quoting *Perez v. Ritz-Carlton (Virgin Islands), Inc.*, 59 V.I. 522, 527-28 (V.I. 2012)).

[73] *Pemberton Sales & Serv. v. Banco Popular de P.R.*, 877 F. Supp. 961, 965 (D.V.I. 1994).

[74] *Williams*, 50 V.I. at 195 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

[75] 3 V.I.C. 701(a).

[76] 3 V.I.C. 715(a).

> System may, in its discretion, refund the accumulated contributions of any member who has less than 3 years of credited service; notwithstanding that such member may not have applied for a refund.[77]

¶28 "Regular interest" is defined in 3 V.I.C. § 702(k) as "interest at such rate as shall be determined by the Board from the experience of the system which shall be not less than two percent nor more than four percent per annum."[78] In the case of *In the Matter of Gallivan v. Gov't Emples. Retirement Sys.*,[79] the Board refunded Magistrate Judge Gallivan for GERS' overcharges for the period from January 2015 through the pay period ending May 27, 2017, and for interest on the overcharges[.]"[80] Like in the instant case, Judge Gallivan had argued that she was entitled to 9% interest under 11 V.I.C. § 951, while GERS in that case argued it did not have to pay pre-judgment interest because 5 V.I.C. § 426(b) prevents the Government of the Virgin Islands from having to pay pre-judgment interest.[81]

¶29 The Board made a similar argument *In the Matter of Gallivan* to the one the Board makes here, arguing that there is no provision that provides for the rate of interest on refunds for overpayment, but § 762(a) is close enough and the interest to be provided should be the same as outlined there.[82] However, *In the Matter of Gallivan*, the Court ruled that "the Board erred in determining that the refund rate described in 3 V.I.C. § 762(a) applies to a refund for a member's overpayments in contributions to GERS due to GERS' overcharges."[83] The Court ruled that Judge Gallivan was instead entitled to receive a refund of her overpayments and accrued interest on a restitution theory, measured by "defendant's unjust gain, not by the plaintiff's loss."[84] The Court ruled that "[o]n a theory of restitution, Gallivan is entitled to a refund for contribution overpayments and GERS' interest gains—but not losses—on those overpayments."[85]

## III. ANALYSIS

¶30 The parties do not dispute that Rogers was erroneously overcharged for her contributions to the GERS retirement fund, just the proper amount of interest due. As there are no material facts in dispute, this case is ripe for summary judgment. The Court will grant Rogers' Motion For Summary Judgment insofar as she requests GERS be made to disgorge funds which rightfully belong to Rogers. The Court will not assess a 9% interest rate or prejudgment interest, but rather,

---

[77] 3 V.I.C. 713(a).

[78] 3 V.I.C. 702(k).

[79] 2019 V.I. Super 62.

[80] *Id.* at ¶ 52.

[81] *Id.* at ¶ 53. The Court did not address the issue of pre-judgment interest beyond stating this argument from GERS, so the Court will address it below as applied to this case.

[82] *Id.* at ¶¶ 54-57.

[83] *Id.* at ¶ 58.

[84] *Id.* at ¶ 59.

[85] *Id.* at ¶ 62.

it will follow the holding from *In the Matter of Gallivan* and order the funds be returned to Rogers along with any monies that were gained by GERS from a positive investment rate of return.

### A. Rogers is not entitled to 9% interest or prejudgment interest on her overpayment refund.

¶31     The Court is not persuaded that 11 V.I.C. § 951 is applicable to the instant case. While it is accurate that the Legislature only included in the statute an interest rate to be applied to refunds provided by GERS after retirement, it is also true that the Legislature omitted from the statute any process for GERS to provide any refund before retirement. Thus, if the Legislature was indicating through omission its desire to only apply the "regular interest" rate to retirement refunds and not any others, it can equally be said the Legislature was indicating through omission its desire for GERS to not provide *any* refunds until retirement. Further, it would seem counter to the Legislature's desire to limit the interest rate assessed on GERS payments to between 2% and 4% if all an employee had to do to receive a much higher 9% interest rate is request a refund of his/her payments any time before or right up to retirement.

¶32     Further, there has been no breach or violation of GERS' contractual commitment to Rogers. GERS' duties and obligations to Rogers, and the prerequisites Rogers must meet to qualify for them, are plainly laid out in 3 V.I.C. § 713(a), paramount among them is the requirement that the employee has withdrawn from service. Rogers has not yet withdrawn from service. This requirement is further backed by the "Application for Refund of Erroneous Contribution"—attached to Rogers' Summary Judgment Memorandum as Plaintiff's Exhibit "F"—which states that refunds are not processed until six (6) weeks after the end of the Quarter in which the applicant has received his or her *final* regular salary payment. The use of "final" underscores that the refund process for erroneous contributions envisions that the employee has received the last paycheck due to the employee upon his or her retirement.

¶33     Rogers avers that it is GERS' "policy" to provide refunds even while an employee is still working for the Virgin Islands Government and, as evidence of this, Rogers includes an affidavit—attached as Plaintiff's Exhibit "H"—from a current government employee who states that "[o]n September 30, 2015, [she] filed an Application for Refund of Erroneous Contributions" and "[i]n 2016, [she] received a refund check from GERS for erroneous contributions."[86] Additionally, GERS and the Board state, and Rogers acknowledges, that GERS did try and returned monies to Rogers. While GERS may have an ad hoc policy of attempting to correct erroneous contributions prior to an employee's retirement, the fact remains that rectifying an employee's account is not required of GERS by statute until such time as the employee retires. Thus, no money has actually become "due" to Rogers, and 11 V.I.C. § 951 is inapplicable.

¶34     Title 5, § 426(b) of the Virgin Islands Code states that "[n]otwithstanding the provisions

---

[86] Pl.'s Mem. Ex. H.

of title 11, section 951(a)(1) and title 33, section 3408(a), of this code, or any other law, pre-judgment interest shall not be charged against the Government of the Virgin Islands on any judgment or decree for the payment of money by the Government."[87] GERS is an "independent and separate agency of the Government of the United States Virgin Islands."[88] As stated above, § 951(a)(1) is not applicable in this situation, and since Rogers points to no other law or provision granting an exception to § 426(b), pre-judgment interest will not be assessed against GERS in this case.

### B. Rogers is entitled to a refund of overpaid contributions, as well as any interest actually accrued on those contributions.

¶35     Rogers, however, is entitled to receive the GERS contributions erroneously deducted from her paycheck pursuant to a theory of restitution. No party disputes that Rogers is owed the money and, indeed, there have been prior attempts to return this money to Rogers before litigation commenced. What is disputed is how much interest is owed to Rogers. While the Board argues that an appropriate remedy under a theory of unjust enrichment is simply the return of the funds, GERS has retained these funds for over a decade during which inflation has lessened its principal value, GERS has had an opportunity to profit from these funds, and GERS has denied Rogers an opportunity to profit from these funds. Thus, simply returning the principal amount to Rogers after it has been held by GERS for so long would not fully redress the harm.

¶36     Further, given the Court's ruling and analysis *In the matter of Gallivan*, which dealt largely with an analogous situation under a theory of restitution, the interest owed to Rogers is whatever the actual interest accrued on the overpaid funds during the period in which GERS retained Rogers' funds. Thus, if investments made by GERS with the $8,138.50 had resulted in a gain of $500.00, Rogers would be entitled to the full $8,638.50. However, as stated *In the matter of Gallivan*, this amount is only to include interest gains, not losses.[89] Therefore, GERS will be ordered to provide the Court with a current and up-to-date accounting of how much Rogers overpaid and the interest that was actually accrued on that amount. The period of calculation on the $8,138.50 payment erroneously assessed against Rogers shall commence on September 13, 2012, when the excess contributions began through the date of entry of judgment in favor of Rogers.[90]

## IV.     <u>CONCLUSION</u>

¶37     Plaintiff Sharline Rogers filed suit on March 8, 2018, against Defendants the Government

---

[87] 5 V.I.C. § 426(b).
[88] 3 V.I.C. 715(a).
[89] 2019 VI Super 62, ¶ 63 ("On a theory of restitution, Gallivan is entitled to a refund for contribution overpayments and GERS' interest gains—but not losses—on those overpayments.").
[90] Pl.'s Mem. 3.

Employees' Retirement System of the United States Virgin Islands and the Board of Trustees of the Government Employees' Retirement System seeking a refund of overpayments erroneously deducted from her salary and paid into GERS' retirement trust fund. Neither party disputes that Rogers made these payments or that they were erroneous. Since Rogers has not yet retired, no refund on payments are statutorily due to her under 3 V.I.C. § 713(a). However, as the Court reasoned *In the matter of Gallivan*, Rogers is entitled to a reimbursement of her overpayments under a theory of restitution, along with any interest which has actually accrued during the time GERS retained
the funds. Therefore, the Court will order GERS to provide an accounting of the amount of interest that actually accrued on the $8,138.50 amount that was erroneously assessed against Rogers and then award her said amount.

A Judgment consistent with this Memorandum Opinion follows.

DATED: May __10__, 2022

**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

**ATTEST:**

TAMARA CHARLES
Clerk of the Court

BY:

DONNA D. DONOVAN
Court Clerk Supervisor __5__ / __12__ / __2022__

IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**

May 13, 2022 10:48 AM
ST-2018-CV-00261
**TAMARA CHARLES
CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
District of St. Thomas/St. John

Sharline L. Rogers,                              Case Number: **ST-2018-CV-00261**
              **Plaintiff**                      Action: **Debt**

v.

**Government Employees' Retirement System of
the United States Virgin Islands et al,
              Defendant.**

### NOTICE of ENTRY
### of
### <u>MEMORANDUM OPINION</u>

**To:**  SHARLINE L. ROGERS _____     Pedro K. Williams, Esq., _____
         _____        Ishmael A. Meyers, Jr., Esq. _____
         _____        _____
         _____        _____
         _____        _____
         _____        _____
         _____        _____
         _____        _____
         _____        _____

                  **Please take notice that on May 13, 2022**
         **a(n)** _____**MEMORANDUM OPINION**_____
                  **dated** _____**MAY 10, 2022**_____ **was/were entered**
                  **by the Clerk in the above-titled matter.**

**Dated:**  **May 13, 2022** _____             **Tamara Charles**
                                                          **Clerk of the Court**
                                          **By:**

                                                   _____
                                                   **Caristina Pickering-Gerard**
                                                   **Court Clerk II**